## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CAROLINE BROWN,
BARBARA WILLIAMS and
STEPHEN B. MATTHEW BROWN,

     Plaintiffs,

     v.

TOWN OF CAPITOL HEIGHTS,
SHAWN MALDON,
*in his individual capacity*,
FAITH FORD, *in her individual capacity*, and
RENITA CASON, *in her individual capacity*,

     Defendants.

Civil Action No. 25-1336-TDC

## MEMORANDUM OPINION

Plaintiffs Caroline Brown, Barbara Williams, and Stephen B. Matthew Brown have filed this action against Defendants Shawn Maldon, Faith Ford, Renita Cason, and the Town of Capitol Heights, Maryland ("the Town" or "Capitol Heights"), based on a series of incidents that occurred when most of the individual parties were elected officials of the Town's government. In the Amended Complaint, Plaintiffs allege employment discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, a deprivation of federal constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), and various state law claims. Defendants have filed a Partial Motion to Dismiss the Amended Complaint, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This case arises out of a series of incidents from May 2018 to July 2023 involving officials and personnel of the town government of Capitol Heights. Defendant Shawn Maldon became the mayor of Capitol Heights in 2018 and served a temporary suspension from office beginning on January 25, 2021. During the relevant time period, Plaintiff Caroline Brown and Defendants Faith Ford and Renita Cason all served as elected members of the Town Council of Capitol Heights ("the Council"). From May 2018 to May 2022, Plaintiff Barbara Williams worked under Caroline Brown's supervision pursuant to a contract to provide videography and media services for the Town. Plaintiff Stephen Brown is Caroline Brown's son. The following facts alleged in the Amended Complaint are accepted as true for purposes of resolving the Motion.

## I.      Plaintiffs' Allegations

### A.      Caroline Brown and Barbara Williams

After Caroline Brown began her service on the Council in May 2018, Maldon "demanded sexual acts, including oral sex" from Caroline Brown on at least 10 occasions. Am. Compl. at 12, ECF No. 34. In addition, during multiple Council meetings from 2018 to 2021, Maldon "place[d] his naked feet on [Caroline] Brown's lap, crotch, legs, and body." *Id.* at 13. Maldon also threatened Caroline Brown with violence. In June 2018, Maldon stated to Caroline Brown: "I could strike you hard enough in the nose and kill you. I could give you one kick and knock you out cold or hit you in your neck and kill you instantly." *Id.* at 19. On another occasion, while at the Town's offices, Maldon "threatened to kill [Caroline] Brown instantly" while making a chopping gesture with his hands. *Id.* In January 2020, during a Council meeting, Maldon "approached [Caroline] Brown in a threatening manner while keeping his hands in his pockets as if he had a weapon" and told her that "he had pepper spray and would spray it in her face." *Id.* At

2

another time, Maldon called the police and falsely claimed that Caroline Brown had stolen a flyer, in an apparent attempt to cause her to be subjected to a false arrest.

Maldon engaged in similar conduct towards Williams. During Williams's time working for the Town, Maldon "repeatedly demanded oral sex" from Williams, including during car rides, and "would threaten her employment and safety" when she refused. *Id.* at 12. Maldon also "brandished a firearm" at Williams multiple times. *Id.* at 19.

On at least five occasions, Maldon followed Caroline Brown and Williams to their homes, showed up at their homes uninvited, and thus "creat[ed] fear for their safety in their own homes." *Id.* at 19–20. On two occasions, on November 15, 2020 and February 2, 2021, Maldon placed nails in the tires of the cars of both Caroline Brown and Williams, broke their windows, and threw eggs at their windows.

On January 25, 2021, following multiple complaints against him, including by personnel other than Plaintiffs, Maldon was temporarily suspended from office pursuant to Town Resolution 2021-13, which "documented extensive findings of Mayor Maldon's misconduct, including his pattern of intimidation and bullying of members of [the] Council, repeatedly issuing threats to Council members, [and] conducting a campaign or pattern of behavior to wrongly and inappropriately prosecute, defame, cajole, accuse and sabotage Councilmembers." *Id.* at 9–10. According to Plaintiffs, however, after the passage of Resolution 2021-13, "the Town failed to implement any meaningful remedial measures to protect other employees or contractors from similar abuse" and did not "conduct investigations, implement protective policies, or take disciplinary action beyond the temporary suspension." *Id.* at 10–11.

Maldon's sexually charged conduct continued even after the suspension. During Council meetings on March 15, July 22, and October 5, 2021, Maldon "engaged in unwanted touching of

3

[Caroline] Brown's breasts and buttocks." *Id.* at 13. At other times, Maldon "continuously" brushed against the breasts and buttocks of Caroline Brown and Williams and also pulled up their shirts and touched their breasts "to check for bras," including after Caroline Brown told him to stop. *Id.* at 16–17. On April 3, 2022, during a meeting at the Town Hall, Maldon again placed his bare feet on Caroline Brown's crotch. On June 12 and September 8, 2022, Maldon "demanded" that Caroline Brown "visit him in hotels." *Id.* at 13.

During this same time period, Maldon also engaged in verbal abuse toward Caroline Brown. On May 17, 2021, Maldon "publicly humiliated" Caroline Brown "by announcing to [an] entire audience that she weighed 380 pounds." *Id.* On at least 15 occasions during official meetings, Maldon called Caroline Brown names including "bitch," "airhead," and "stupid." *Id.*

On August 12, September 5, and October 20, 2021, Maldon left "AIDS/STD pamphlets" on Caroline Brown's desk. *Id.* at 14. On July 3, 2023, Maldon "spread false rumors" about Caroline Brown's sexual orientation, including by telling staff members and members of the public that she was engaged "in a relationship" with Williams. *Id.* at 13. At other times, Maldon stated during official meetings that Caroline Brown "was the devil and was going to be killed." *Id.* at 17. At a public event, he "snatched a rainbow-decorated flyer" from Caroline Brown's hands during a public event and, in a derogatory manner, stated that Brown was "trying to help her type of people (LGBTQ)." *Id.* at 18. At another public event, Maldon pointed at Caroline Brown, "declared that she was the devil," and then directed the preacher to "throw the holy water on her," which the preacher attempted to do. *Id.*

As for Williams, on March 18, 2021, Maldon "appeared naked at his door" when Williams came to collect work-related papers. *Id.* at 17. On May 5, August 15, and November 20, 2021, Maldon "demanded sexual favors" from Williams in exchange for continuing to provide her with

4

contract work. *Id.* at 16. On February 3, 2022, during a private meeting, Maldon "forcibly lifted" Williams's shirt and exposed her breasts. *Id.* at 17. On April 7, 2022, at the Town Hall, Maldon commented that Williams was not wearing a bra and "exposed himself to her." *Id.* During a budget meeting on June 22, 2022, Maldon put his foot in Williams's crotch area. Then, on September 10, 2022, Maldon "groped" Williams's breasts against her will. *Id.* On another occasion, on December 5, 2022, Maldon "forcibly attempted to 'fix'" Williams's hair and told her, "Now I own you." *Id.*

During this time period, Maldon withheld money earned by Plaintiffs. He withheld over $4,000 owed to Caroline Brown for work performed between March and May 2021, and he withheld hundreds of dollars owed to Williams for videography services conducted in July, August, and September 2022.

At some point, Maldon established an "insurrection team," which included Defendants Cason and Ford, for the purpose of "targeting" Caroline Brown and Williams. *Id.* at 21. As part of the insurrection team, Cason "illegally accessed" their personnel files, "obtained unauthorized access to [Caroline] Brown's social security information," and "spread false information" about Caroline Brown and Williams to Town employees, including by claiming that "Brown's real name was not Caroline." *Id.* Ford was present for multiple incidents of harassment, but she did not intervene to stop them.

### B.    Stephen Brown

Plaintiff Stephen Brown is Caroline Brown's son and was a teenager during the relevant time period. When he was 15 years old, Maldon hired Stephen Brown to work for him and then "engaged in systematic grooming behavior" toward him. *Id.* at 14. According to Plaintiffs, Maldon "attempted to isolate Stephen Brown from his mother by repeatedly asking to drive

5

Stephen alone to events." *Id.* at 15. He also engaged in "financial manipulation" by gifting to Stephen Brown cash, food, and clothing and arranging a summer job for him. *Id.* On multiple occasions, Maldon assaulted Stephen Brown by hitting him in the chest with his fist when Stephen Brown did not obey him. During this time period, Maldon specifically told Caroline Brown that he was grooming Stephen Brown in order to make him "into the man" who Maldon needed. *Id.* at 14–15. He also told Caroline Brown that Stephen Brown would "be mine when he turns 18," and that she would not be able to keep him away from her son. *Id.* at 15–16.

### C.     Impact of the Harassment

Caroline Brown asserts that as a result of all of this conduct, she became "wheelchair-bound from stress-induced conditions" and "bedbound, unable to walk or talk." *Id.* at 22. As a result of the stress, Caroline Brown fainted on February 3, 2020, had a "transient ischemic attack," had to be hospitalized, and has had ongoing medical treatment for her "stress-induced conditions." *Id.* She asserts that she "was forced into early retirement" in May 2022. *Id.* at 23. As for Williams, the trauma and stress from Maldon's misconduct caused her to develop "stress-induced alopecia," consisting of the loss of significant amounts of her hair. *Id.* Both women have had symptoms consistent with post-traumatic stress disorder, including "intrusive thoughts, nightmares, hypervigilance, and severe anxiety." *Id.* They have been afraid to leave their homes and have required psychiatric treatment and therapeutic intervention.

## II.     Procedural History

On January 10, 2025, Caroline Brown and Williams each filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), in which they alleged "sexual harassment, gender discrimination, hostile work environment, retaliation, and violations of their civil rights," "unwanted sexual advances, physical assault, death threats,

6

religious discrimination, and systematic harassment" by Maldon and other Town officials, and a failure by the Town to investigate complaints about this misconduct. *Id.* at 6.

On April 25, 2025, Caroline Brown and Williams filed the original Complaint in this case. In the presently operative Amended Complaint, in which Stephen Brown was added as a plaintiff, Plaintiffs allege 12 causes of action in the following numbered counts: (1) a claim against the Town for sexual harassment, in violation of Title VII; (2) a claim pursuant to § 1983 against all Defendants for violations of the constitutional rights to equal protection of the law, due process of law, and freedom from unreasonable seizures, in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; (3) a claim against Maldon for battery; (4) a claim against Maldon for false imprisonment; (5) a claim against all Defendants for intentional infliction of emotional distress ("IIED"); (6) a claim against all Defendants for defamation; (7) a claim against all Defendants for civil conspiracy; (8) a claim against all Defendants for sexual harassment, in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20–606 (LexisNexis 2021); (9) a claim against all Defendants for harassment under state law; (10) a claim against the Town for sex discrimination based on the failure to investigate and take remedial action, in violation of Title VII and the MFEPA; (11) a claim against all Defendants for religious discrimination, in violation of Title VII and the MFEPA; and (12) a claim against Maldon for child sexual abuse, in violation of the Maryland Child Victims Act of 2023 ("MCVA"), Md. Code Ann., Cts. & Jud. Proc. § 5–117 (LexisNexis Supp. 2025).

## DISCUSSION

In their Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek dismissal of all claims with the exception of the part of the battery claim in Count 3 based on incidents that occurred on or after April 25, 2022.

## I.    Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.    Employment Discrimination

In Counts 1, 8, 10, and 11, Plaintiffs allege employment discrimination claims under Title VII and the MFEPA based on a hostile work environment (sexual harassment), sex discrimination, and religious discrimination. In their Motion, Defendants argue that the claims against Maldon, Ford, and Cason ("the Individual Defendants") should be dismissed because Title VII and MFEPA claims may be asserted only against the employer rather than individuals; Caroline Brown's claims should be dismissed because she was an elected official and therefore not a protected employee under either statute; Williams's Title VII claims should be dismissed because she was an independent contractor, not an employee covered by that statute, and because they were not timely filed with the EEOC; Williams's MFEPA claims should be dismissed because she did not provide the requisite notice to the Town; and Williams's religious discrimination claim should be dismissed because it lacks sufficient factual allegations.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

8

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Because the MFEPA is the state law counterpart to Title VII and courts typically apply Title VII analysis to MFEPA claims, the Court will address the Title VII and MFEPA claims together under the federal standards. *See Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 788 (D. Md. 2013) (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007)).

## A.    Individual Defendants

As a preliminary matter, the Court will dismiss the MFEPA claims asserted in Counts 8 and 10 against the Individual Defendants, as well as the Title VII and MFEPA claims for employment discrimination based on religion asserted in Count 11 against the Individual Defendants, because Title VII and MFEPA claims must be asserted against the employer, in this case the Town, and may not be asserted against supervisors or managers in their individual capacities. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998); *Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1227–28 (Md. Ct. Spec. App. 2005).

## B.    Caroline Brown

Next, Defendants assert that Caroline Brown's employment discrimination claims must be dismissed because Title VII and the MFEPA do not include elected officials within the definition of an "employee" protected by those statutes. Mot. Dismiss at 5, ECF No. 35-1. Under Title VII, a protected employee "shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof." 42 U.S.C. § 2000e(f). Likewise, under the MFEPA, a protected employee "does not include . . . an individual elected to public office." Md. Code Ann., State Gov't § 20–601(c)(2). Because Caroline Brown was an elected member of the Council when she was allegedly subjected to discrimination, she was not a protected employee

9

under Title VII or the MFEPA. Her employment discrimination claims in Counts 1, 8, 10, and 11 will therefore be dismissed.

## C. Barbara Williams

### 1. Title VII: Statute of Limitations

As to Williams, Defendants also assert that her Title VII claims in Counts 1, 10, and 11 must be dismissed because the claims are time-barred. Before filing suit under Title VII, a plaintiff must first file a charge of discrimination with the EEOC or a "State or local agency with authority to grant or seek relief" from the discriminatory practice. 42 U.S.C. § 2000e-5(e)(1). In a state such as Maryland, which has a state or local agency with such authority that has agreed to have the EEOC process charges of discrimination that would otherwise fall within its jurisdiction, the charge of discrimination must be submitted within 300 days of the act constituting the unlawful employment practice. *Id.*; *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n* (4th Cir. 2001); *EEOC v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir. 1990). Accordingly, a plaintiff cannot recover "for discrete acts of discrimination or retaliation" that occurred outside of the 300-day limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 229 (D. Md. 2022) ("Plaintiffs bringing Title VII claims in Maryland are subject to a 300-day statute of limitations.").

Here, Williams filed her charge of discrimination with the EEOC on January 10, 2025, which is more than two years after the latest discrete act involving Williams, which occurred on December 5, 2022, and more than two and a half years after Williams stopped providing contract services to the Town on May 9, 2022. Where Williams did not file an EEOC complaint within 300 days of the end of the allegedly discriminatory conduct, her Title VII claims in Counts 1, 10,

and 11 are time-barred. The Court therefore need not address Defendants' assertion that the Title VII claims must be dismissed because Williams was an independent contractor.

### 2.    Religious Discrimination

As to the religious discrimination claim in Count 11, which includes a claim under the MFEPA, all of the allegations potentially supporting a religious discrimination claim, such as Maldon calling Caroline Brown the devil and having holy water thrown at her, relate only to Caroline Brown and not to Williams. The Court will therefore dismiss Count 11 for failure to state a claim as to any claim asserted by Williams.

### 3.    LGTCA

As for Williams's MFEPA claims against the Town in Counts 8 and 10, Defendants assert that they must be dismissed because Williams did not sufficiently plead compliance with the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5–304 (LexisNexis 2020).

The LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury." *Id.* § 5–304(b)(1). This notice requirement applies to any action for unliquidated damages, including employment discrimination claims brought under the MFEPA. *See Williams v. Morgan State Univ.*, 300 A.3d 54, 62 n.7 (Md. 2023) (stating that "a plaintiff bringing a claim for employment discrimination against a local government entity must provide notice as required by the [LGTCA]"); *Hansen v. City of Laurel*, 25 A.3d 122, 124 n.3, 130 (Md. 2011).

Written notice must be provided "in person or by certified mail, return receipt requested," state the "time, place, and cause of the injury," and in the case of the Town, must be provided to

11

the "corporate authorities of the defendant local government." Md. Code Ann., Cts. & Jud. Proc. § 5–304(b)(2), (c)(1), (c)(4). "Corporate authorities are the political officials of a municipal corporation—the mayor and city council." *Hansen v. City of Laurel*, 996 A.2d 882, 890 (Md. Ct. Spec. App. 2010), *aff'd*, 25 A.3d 122 (2011). The purpose of the requirement is to provide the local government with notice at a time when it can conduct its own investigation of the incident while the evidence is still fresh so as to ascertain the character and extent of the injury and the responsibility the local government may have for it. *See Rios v. Montgomery Cnty.*, 872 A.2d 1, 14 (Md. 2005). However, a plaintiff need not strictly follow the procedures of the notice requirement "if, within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) The claimant's injury; or (2) The defect or circumstances giving rise to the claimant's injury." Md. Code Ann., Cts. & Jud. Proc. § 5–304(e). Moreover, a claim may still proceed without notice if the plaintiff, through a motion, demonstrates good cause for the failure to comply with the notice requirement, after which the burden is on the local government to "affirmatively show that its defense has been prejudiced by lack of required notice." *Id.* § 5–304(d); *Prince George's Cnty. v. Longtin*, 19 A.3d 859, 869 (Md. 2011).

A plaintiff is required, in the complaint, to plead compliance with the LGTCA notice requirement. *Hansen*, 25 A.3d at 137; *see Wilkinson v. Bd. of Cnty. Comm'rs*, 279 A.3d 1052, 1085 (Md. Ct. Spec. App. 2022) (stating that the pleading requirement can be satisfied by pleading "strict or substantive compliance" with the notice requirement). Here, the Amended Complaint alleges that the Town had actual or constructive notice of Plaintiffs' injuries or the circumstances giving rise to those injuries, namely, Maldon's misconduct. Specifically, it states that the Town had actual notice of Maldon's sexual harassment of Plaintiffs through "[m]ultiple internal complaints filed with Town officials," "[h]arassment occurring openly during public meetings,"

12

"[d]irect observation by Town officials," "[p]olice reports documenting the harassment," and "[v]ideo recordings of town meetings." Am. Compl. at 25–26. The Amended Complaint further states that the Town's actual notice was reflected in Resolution 2021-13, which "document[ed]" some of "Maldon's misconduct." *Id.* at 9. Where the Town's corporate authorities—the mayor and Council—were present at these public meetings, were involved in the passage of Resolution 2021-13, and were, in the case of Maldon, Ford, and Cason, alleged perpetrators of the misconduct, the Court finds that the Amended Complaint sufficiently alleged actual or constructive notice of the "defect or circumstances giving rise to [Williams's] injury" within the requisite time period. Md. Code Ann., Cts. & Jud. Proc. § 5–304(e). The Motion will therefore be denied as to the argument that the MFEPA claims in Counts 8 and 10 must be dismissed based on the failure to allege compliance with the LGTCA.

## III.    Section 1983

In Count 2, Plaintiffs allege a § 1983 claim against all Defendants in which they assert that Defendants deprived them of their constitutional rights to "equal protection, due process, and freedom from unreasonable seizure." Am. Compl. at 26. Section 1983 provides that a person who "under color of" law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. To prevail on a § 1983 claim against an individual, a plaintiff must demonstrate that: (1) the defendant violated a right secured by the United States Constitution or federal law; and (2) the act or omission causing the violation of a right was committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A governmental entity is not subject to vicarious liability under § 1983 for the actions of its employees. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

Nevertheless, a local government may be subjected to liability under § 1983 if the plaintiff can establish that the constitutional violation was caused by a "custom" or "policy" of the local government. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

### A.   Individual Defendants

Defendants seek dismissal of the § 1983 claims against Maldon, Ford, and Cason ("the Individual Defendants") on the grounds that they did not act under color of state law. "[S]tate employment is generally sufficient to render the defendant a state actor." *West*, 487 U.S. at 49 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n.18 (1982)). At the time of the relevant events, Maldon was the mayor of the Town, and Ford and Cason were members of the Council. Although Defendants argue that the Individual Defendants did not act under color of law because the alleged misconduct did not "represent the official policy of the Town," Mot. Dismiss at 14, and constituted personal actions rather than the exercise of governmental power, a government official can be deemed to act under color of law "when he abuses the position given to him by the State." *West*, 487 U.S. at 50. Here, many of the alleged actions forming the basis of the § 1983 claims occurred during and in relation to official work for the Town and involved an abuse of an official position. For example, the Amended Complaint alleges that Maldon placed his bare feet on Caroline Brown's crotch during Council meetings at which he was performing his duties as mayor. When Maldon demanded oral sex from Williams, he abused his authority by threatening her employment under a government contract if she refused. The Court will therefore decline to dismiss the § 1983 claims based the assertion that the Individual Defendants were not acting under color of state law.

14

The Court will, however, dismiss the § 1983 claims against Ford and Cason on the separate ground that the Amended Complaint does not state sufficient facts to support § 1983 liability in relation to these defendants. Plaintiffs' § 1983 claim primarily alleges sex discrimination in the form of sexual harassment, in violation of the Equal Protection Clause of the Fourteenth Amendment, as well as violations of Plaintiffs' constitutional rights to due process and to be free from an unreasonable seizure. The Amended Complaint alleges that Ford and Cason participated in "'insurrection team' meetings targeting Plaintiffs." Am. Compl. at 21. The only specific allegation against Ford is that she witnessed multiple instances of harassment but failed to intervene. Particularly where Ford was not a supervisor to any of Plaintiffs, this allegation is insufficient to support a claim of sexual harassment that could support a § 1983 claim, a due process violation, or an unreasonable seizure.

As for Cason, the only allegations are that she illegally accessed Plaintiffs' personnel files and Caroline Brown's "social security information," and falsely told other Town employees that Caroline Brown's real name was not Caroline, *id.*, but Plaintiffs have not articulated how these facts could support a claim of sex discrimination in violation of the Equal Protection Clause, or a violation of due process or the Fourth Amendment, particularly where the information accessed was presumably in files in Town offices, not within any property belonging to Plaintiffs. The Court will therefore dismiss the § 1983 claim as to Ford and Cason.

### B.    Capitol Heights

Defendants also seek dismissal of the § 1983 claim against the Town on the ground that the alleged deprivations of Plaintiffs' rights were not the result of a custom or policy of the Town. Section 1983 liability against a local government based on a custom or policy can arise in four ways:

15

(1) through an express policy, such as a written ordinance or regulation; (2) through
the decisions of a person with final policymaking authority; (3) through an
omission, such as a failure to properly train officers, that manifests deliberate
indifference to the rights of citizens; or (4) through a practice that is so persistent
and widespread as to constitute a custom or usage with the force of law.

*Lytle*, 326 F.3d at 471 (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Plaintiffs do

not allege an express policy, but they pursue the other three theories.

The Court finds that the Town's alleged failure to investigate or correct misconduct by

Maldon could plausibly meet the fourth form of a violation because it constitutes a "custom or

usage with the force of law," thus giving rise to § 1983 liability. *Id.* To state a claim under such

a theory of "custom by condonation," a plaintiff "must point to a persistent and widespread practice

of municipal officials, the duration and frequency of which indicate that policymakers (1) had

actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate

indifference." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting

*Spell v. McDaniel*, 824 F.2d 1380, 1386–91 (4th Cir. 1987)). The Amended Complaint alleges

that the "Town's deliberate failure to investigate or take corrective action, despite multiple internal

complaints and external reports, allowed the harassment to continue unabated." Am. Compl. at 4.

In support of this allegation, the Amended Complaint documents a series of events constituting

long-term, flagrant harassment of Plaintiffs by Maldon and alleges that the Town was aware of

this misconduct because of numerous complaints by Plaintiffs. It also alleges that the Town was

clearly aware of Maldon's bullying, intimidation, and abusive conduct toward members of the

Council such as Brown based on its passage on January 25, 2021 of Resolution 2021-13 addressing

such misconduct. Finally, it alleges numerous additional incidents of harassment following

Resolution 2021-13, some of which took place during Council meetings or other official events.

16

Taken together, these allegations support the conclusion that the Town knew of Maldon's "persistent and widespread" misconduct, and that it was of sufficient "duration and frequency" that the Town's failure to stop such misconduct, particularly after Resolution 2021-13, was the result of deliberate indifference as necessary to establish § 1983 liability against the Town. *Owens*, 767 F.3d at 402. Moreover, the fact that Maldon, Ford, and Cason were all members of the Town's leadership, as mayor and members of the Council, further demonstrates that the Town had actual knowledge of the alleged misconduct. The Court therefore finds that the Amended Complaint has stated a § 1983 claim against the Town based on a custom of condonation of misconduct by Maldon. *See Lytle*, 326 F.3d at 471; *Spell v. McDaniel*, 824 F.2d 1380, 1390–91 (4th Cir. 1987). The Motion will thus be denied as to the § 1983 claim against the Town in Count 2. The Court therefore need not address whether the Amended Complaint sufficiently alleges a § 1983 claim against the Town based on the other means by which § 1983 municipal liability could be established.

## IV.    Battery

In Count 3, Plaintiffs allege battery by Maldon and assert that he "intentionally and offensively touched Plaintiffs without their consent through sexual groping, forcible exposure, and physical intimidation." Am. Compl. at 27. In their Motion, Defendants assert that most of the battery claims are time-barred pursuant to Maryland's three-year statute of limitations for battery claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5–101; *Ford v. Douglas*, 799 A.2d 448, 450 (Md. Ct. Spec. App. 2002). On the issue of when a claim accrues for purposes of the statute of limitations, Maryland law applies the discovery rule, under which a limitations period begins to run when "the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Kisser*, 431 A.2d 677, 680 (Md. 1981); *see Tate v. Am. Gen. Life Ins. Co.*, 627 F.

Supp. 3d 480, 494 (D. Md. 2022).  Because the statute of limitations is an affirmative defense, a Rule 12(b)(6) motion "generally cannot reach the merits" of the defense, except "if all facts necessary to the affirmative defense clearly appear on the face of the complaint."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citation omitted).

First, as to Caroline Brown, Defendants assert that her battery claim is time-barred because she does not assert any conduct that would constitute battery that occurred after April 25, 2022, or within three years of the filing of the original Complaint on April 25, 2025.  Plaintiffs counter that "[t]he continuous nature of Maldon's physical harassment . . . makes it plausible that actionable conduct occurred within the limitations period," such that discovery is necessary.  Opp'n at 19, ECF No. 38.  Where all of the incidents of physical contact alleged by Caroline Brown occurred prior to April 25, 2022, any claims of battery arising from those incidents are time-barred.  Because Caroline Brown would necessarily be aware if she were subjected to a battery on a date after April 25, 2022, she does not need discovery to allege at least some facts relating to any such incident. Where she has not done so, the Court finds that the Amended Complaint does not sufficiently allege a battery claim based on an incident occurring within the limitations period.  Caroline Brown's battery claim in Count 3 will therefore be dismissed as time-barred.

Defendants also seek the partial dismissal of Williams's battery claim as time-barred "to the extent it is based on an alleged February 3, 2022 incident," Mot. Dismiss at 29, in which Maldon "forcibly lifted" her shirt and exposed her breasts, Am. Compl. at 17.  Where this incident occurred more than three years before the filing of the original Complaint, and Williams was necessarily aware of the incident at that time, any battery claim arising from that incident is time-barred.  As Defendants concede, the Amended Complaint also alleges battery incidents that

18

occurred after April 25, 2022 and are not time-barred, so Williams's battery claim will be dismissed only in part and not in relation to those later incidents.

## V.    False Imprisonment

In the Motion, Defendants seek dismissal of the false imprisonment claim in Count 4 for failure to state a claim. To state such a claim, a plaintiff must allege facts showing (1) "the deprivation of the liberty of another"; (2) "without consent"; and (3) "without legal justification." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). A deprivation of liberty occurs when a person is "compelled to remain where he does not wish to remain, or to go where he does not wish to go." *Mason v. Wrightson*, 109 A.2d 128, 131 (Md. 1954). In the Amended Complaint, Plaintiffs allege that Maldon "restrained Plaintiffs' freedom of movement through physical intimidation, threats with firearms, following them home, and attempting false arrests." Am. Compl. at 27. Specifically, Plaintiffs allege that Maldon "made death threats" to Caroline Brown on multiple occasions, threatened to pepper spray her, and "brandished a firearm" at Williams. *Id.* at 19. While these alleged threats were clearly intimidating and likely constituted assaults, the Amended Complaint does not allege that they were accompanied by any order, explicit or implicit, that the victim was not permitted to leave the area or was required to remain in a particular location. Similarly, while Plaintiffs allege that Maldon followed Plaintiffs home on certain occasions and also engaged in vandalism at or near their homes that caused them to fear leaving their homes, there are no allegations showing that rather than causing general fear, Maldon's actions actually resulted in Plaintiffs' confinement to their homes against their will. Finally, the Amended Complaint also alleges that Maldon made a false report about Caroline Brown to the police so that she would be arrested, but it does not claim that she was ever actually subjected to an arrest. Accordingly, the Motion will be granted as to the false imprisonment claim in Count 4.

19

## VI.    IIED

In Count 5, Plaintiffs allege a claim of intentional infliction of emotional distress against all Defendants. Under Maryland law, the tort of IIED has four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress"; and "(4) The emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977); *see McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 286 (D. Md. 2020). As to the second prong, the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614.

In the Amended Complaint, Plaintiffs allege that Maldon intentionally and repeatedly engaged in verbal and physical sexual harassment, threats of violence, and other misconduct that the Court finds to be extreme and outrageous conduct. This misconduct included groping the breasts and buttocks of Caroline Brown and Williams without their consent, placing his bare feet in their crotches, and demanding sexual favors from Williams in exchange for continued contract work. It also included multiple threats to kill Caroline Brown, brandishing a firearm at Williams, following them home, and vandalizing their homes by breaking windows. Taken together, these acts constitute the kind of "utterly intolerable" conduct encompassed by the tort of IIED. *Id.*

Caroline Brown and Williams have also sufficiently alleged that Maldon's actions caused them severe emotional distress. Caroline Brown has alleged that as a result of these activities, she developed "stress-induced conditions" that caused her to be "bedbound," "wheelchair-bound," and "unable to walk and talk," to suffer from toxic shock syndrome, and to have to be hospitalized. Am. Compl. at 22. As a result of Maldon's conduct, Williams developed "stress-induced alopecia,

20

losing significant amounts of hair due to the extreme stress and trauma." *Id.* at 23. Both women "required psychiatric treatment for severe anxiety and fear" and developed "symptoms consistent with post-traumatic stress disorder." *Id.* The Court will therefore find that Plaintiffs have stated a plausible IIED claim against Maldon and will deny the Motion as to that claim. However, the Court will dismiss the IIED claims against Ford and Cason because the Amended Complaint's limited allegations against them, *see supra* part III.A, are insufficient to show that either engaged in extreme and outrageous conduct toward Plaintiffs.

As for any IIED claim against the Town, it necessarily must be based on a theory of vicarious liability for Maldon's actions. Under the LGTCA, a local government may be held liable "for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Code Ann., Cts. & Jud. Proc. § 5–303(b)(1). "[F]or an employee's tortious acts to be considered within the scope of employment, the acts must have been in furtherance of the employer's business and authorized by the employer." *Barclay v. Briscoe*, 47 A.3d 560, 567–68 (Md. 2012) (quoting *S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 638 (Md. 2003)). In relation to vicarious liability of an employer for "intentional torts committed by an employee," the Supreme Court of Maryland "has emphasized that where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." *Sawyer v. Humphries*, 587 A.2d 467, 471 (Md. 1991).

Here, Maldon's alleged intentional, extreme, and outrageous conduct directed toward Plaintiffs, even though much of it occurred at work, could not plausibly have been carried out in

21

furtherance of Maldon's mayoral duties, nor could it plausibly have been authorized by the Town. *See Ennis v. Crenca*, 587 A.2d 485, 490 (Md. 1991) (holding that a local government official was not engaged in activities similar to those of a legislator furthering the government's business and thus was not acting within the scope of employment when she made an allegedly defamatory statement, because it was made in furtherance of her personal interests); *Thomas v. BET Sound-Stage Rest./BrettCo, Inc.*, 61 F. Supp. 2d 448, 454 (D. Md. 1999) (applying Maryland law and concluding that "an employer cannot be held vicariously liable for sexual assaults committed by its employees" because such acts are outside the scope of employment). The Court thus finds the Amended Complaint does not state a plausible claim of IIED against the Town and will therefore dismiss Count 5 as to the Town.

## VII.   Defamation

Defendants seek dismissal of the defamation claim in Count 6 on the ground that it is time-barred by the statute of limitations, which under Maryland law is one year for defamation claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5–105. In their memorandum in opposition to the Motion, Plaintiffs concede that the claim is time-barred. Count 6 will therefore be dismissed.

## VIII.   Civil Conspiracy

Defendants also seek dismissal of the civil conspiracy claim in Count 7, in which Plaintiffs allege that Defendants "agreed and acted in concert to harass and retaliate against Plaintiffs through the creation of the '[insurrection] team' and coordinated harassment." Am. Compl. at 29. A civil conspiracy consists of (1) "[a] confederation of two or more persons by agreement or understanding"; (2) "some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal"; and (3) "[a]ctual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (quoting

*Van Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971)). Under Maryland law, civil conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Id.* (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995)). Rather, "in order to set forth a tort claim for civil conspiracy, the plaintiffs must adequately allege the existence of the underlying tortious activity." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1049 (Md. 1995).

Because all of Plaintiffs' other claims against Maldon, Ford, and Cason will be dismissed except for the battery, IIED, and § 1983 claims, the alleged conspiracy among them must relate to those claims. While the Amended Complaint includes allegations about the existence of an "insurrection team" including Maldon, Ford, and Cason through which they allegedly "coordinated harassment" and "acted in concert to harass and retaliate against Plaintiffs," Am. Compl. at 21, 29, it fails to state facts demonstrating how the acts alleged to have been taken in furtherance of the conspiracy, such as Cason accessing Plaintiffs' personnel files and Caroline Brown's social security information, relate to Maldon's alleged conduct constituting battery or IIED or his alleged sexual harassment or other conduct forming the basis for the § 1983 claim. The only act by either Ford or Cason potentially connected to Maldon's alleged battery, IIED, or sexual harassment is Ford's alleged failure to intervene in harassment, but this general allegation, without more, is insufficient to support the civil conspiracy claim. Count 7 will therefore be dismissed.

## IX.   Harassment

Defendants also seek dismissal of Count 9, a claim of "harassment under state law," which Plaintiffs assert to be based on Defendants' "physical intimidation, death threats, stalking, property damage, false accusations, unauthorized access of personal information, and public humiliation." *Id.* at 31. For purposes of this claim, Plaintiffs define harassment as "a course of conduct that

23

alarms or seriously annoys another person with the intent to harass, alarm, or annoy the other person." *Id.* Although the Maryland criminal code bans harassment in such terms, *see* Md. Code Ann., Crim. Law § 3–803(b) (LexisNexis 2021), there is no general tort of harassment in Maryland law that is actionable in a civil suit. *See Shenk v. Humane Soc'y of Carroll Cnty., Inc.*, No. ELH-20-443, 2022 WL 252955, at *13 & n.13 (D. Md. Jan. 27, 2022); *Davidson-Nadwodny v. Wal-Mart Assocs., Inc.*, No. CCB-07-2595, 2008 WL 2415035, at *3 (D. Md. June 3, 2008). Count 9 will therefore be dismissed.

## X.   **Child Sexual Abuse**

In the Motion, Defendants also request dismissal of Count 12, in which Plaintiff Stephen Brown has alleged a claim against Maldon for child sexual abuse, in violation of the MCVA, which states that "an action for damages arising out of a claim or claims of sexual abuse that occurred while the victim was a minor may be filed at any time." Md. Code Ann., Cts. & Jud. Proc. § 5–117(b). As relevant here, the statute defines "sexual abuse" as "any act that involves . . . sexual conduct that is a crime." *Id.* § 5–117(a). In the Amended Complaint, Plaintiffs allege that Maldon hired Stephen Brown when he was 15 years old to work for him and then "engaged in systematic grooming behavior toward" him. Am. Compl. at 14. Specifically, Plaintiffs allege that Maldon "attempted to isolate Stephen Brown from his mother by repeatedly asking to drive Stephen alone to events" while "stating that he wanted 'to be in control'" of both of them; communicating directly with him to arrange outings together, and engaging in financial manipulation by giving him cash, buying him lunch, buying him clothing, finding him a summer job, and communicating directly with him by cell phone. *Id.* at 15. Plaintiffs also allege that Maldon "physically assaulted [Stephen Brown] by hitting him directly in the chest with his fist when the child would not 'obey' him," and that he "continued this physical abuse" until Caroline Brown reported it to the authorities. *Id.* at

24

20–21.  Even construing the allegations in the light most favorable to Plaintiffs, the Court finds that they do not state a claim under the MCVA because the alleged acts of grooming are not crimes under Maryland law, and the alleged physical assault, which may amount to a crime, is not a sexual act.  Because the Amended Complaint has not alleged behavior that constitutes "sexual conduct that is a crime," Count 12 will be dismissed.  Md. Code Ann., Cts. & Jud. Proc. § 5–117(a)(5).

**CONCLUSION**

For the foregoing reasons, Defendants' Partial Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.  It will be granted in that Counts 1, 4, 6, 7, 9, 11, and 12; the claims in Count 2 against Ford and Cason; the claims in Count 3 based on incidents that occurred before April 25, 2022; the claims in Count 5 against the Town, Ford, and Cason; and all claims in Counts 8 and 10 except for the MFEPA claims brought by Williams against the Town will be dismissed as specified in the accompanying Order.  The Motion will be denied as to the claims in Count 2 against the Town and Maldon, Williams's claim in Count 3 based on incidents that occurred on or after April 25, 2022, the claims in Count 5 against Maldon, and Williams's MFEPA claims in Counts 8 and 10 against the Town.  Where the claim brought by Stephen Brown and all claims against Ford and Cason will be dismissed, these parties will be dismissed from this case.  A separate Order shall issue.

Date:  February 19, 2026



THEODORE D. CHUANG
United States District Judge